UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

```
GREGORY DABBS, KATI DABBS,      )
N.D., and Z.D.,                 )
                                )
          Plaintiffs,           )
                                )
     v.                         )     Case No. 05-1148
                                )
TAZEWELL COUNTY, ILLINOIS,      )
JENNIFER SEWARD, PATRICK        )
FLANNIGAN, RICHARD STEWART,     )
CHRISTINA SHOWALTER, JODI       )
MEDLEY, DAVID FORBES, SHELLEY   )
HUSEMANN, CARLA WARNKE-KUNTZ,   )
and NANCY REEVES,               )
                                )
          Defendants.           )
```

## O R D E R

Before the Court are Plaintiffs' Amended Complaint [Doc. # 95]; Plaintiffs' Motion for Preliminary Injunction [Doc. # 94]; Camelot Defendants' Motion to Dismiss [Doc. # 101]; Defendant Tazewell County's Motion to Dismiss and Motion to Strike [Doc. # 106]; Motion to Dismiss by Defendants' Flannigan, Stewart, Seward, Showalter and Reeves [Doc. # 109]; the Guardian Ad Litem's Report to the Court [Doc. # 125]; Plaintiffs N.D.'s and Z.D.'s Motion to Dismiss [Doc. # 122]; and Motion to Dismiss on Behalf of Kati Dabbs, Plaintiff [Doc. # 130].

### I.  BACKGROUND

The following allegations are taken from the Amended Complaint. On February 17, 2003, an altercation occurred between Plaintiffs Kati and Gregory Dabbs. After this altercation, "Kati Dabbs was held against her will at the Washington, Illinois police department by Officer Steven Parkhurst for 5 1/2 hours and she was forced to write a statement for Parkhurst before he would allow her

to leave her detainment." Parkhurst then called the Department of Children and Family Services (DCFS) "hotline" with allegations of abuse and neglect. "[T]he 'hotline' report was 'indicated' and signed off on by [Defendant DCFS Social Worker Supervisor] Christina Showalter or the DCFS Pekin Field Office."

The next day, Tazewell County State's Attorney Stewart Umhotz caused to be filed a "Shelter Care Petition" regarding Plaintiff N.D. This petition, which was written by Defendant DCFS Social Worker Richard Stewart, alleged that Gregory and Kati had a "physical fight," that during that fight Gregory was "highly intoxicated," and that N.D. was an abused or neglected minor. The petition was "rife with allegations, innuendo, and allusions but nothing in it shows evidence of any abuse nor neglect of N.D." N.D. was taken into protective custody on February 18, 2003.

Before taking N.D. into protective custody, Stewart or Showalter never checked into Parkhurst's allegations or contacted Gregory or Kati Dabbs. At the February 18th shelter care hearing, Plaintiffs Gregory, Kati and N.D., were not represented by counsel. Further, it is "a blanket policy or custom" in Tazewell County that "minors automatically go into 'shelter care' . . . with the parents unrepresented."

An "Answer" hearing was held on March 7, 2003, at which time Kati and Gregory learned that N.D. had been placed with Defendant DCFS Social Worker Nancy Reeves by Camelot Community Care, Inc., ("Camelot"). The case was continued until March 17, 2003 without resolution. In the meantime, Gregory Dabbs was charged with misdemeanor criminal charges "based upon Parkhurst's lies and allegations." State's Attorney Stewart Umholtz and his employees repeatedly used the shelter care case to accomplish things they

could not legally do in Gregory Dabb's misdemeanor case. For example, Assistant States Attorney Anna Peters would elicited testimony from N.D. in the shelter care case and then she transcribed the testimony and introduced it in Gregory Dabb's misdemeanor case.

Between February 2003 and July 2003, "Peters repeatedly pressured Mr. Dabbs to cop a plea bargain and pressured Mrs. Dabbs to change her story regarding Parkhurst locking her up for 5 1/2 hours and forcing her to write a statement in order to leave." Further, the shelter care "adjudication hearing" was repeatedly continued; a "service plan" was not filed with the state court "for almost half a year"; when the service plan was filed it was not signed and the court did not review it; and the shelter care "dispositional hearing" was not held until more than 30 days after the adjudication hearing.

On July 31, 2003, Peters told Mr. Dabbs if he stipulated to the shelter care petition N.D. would immediately be returned home. This never happened. Instead, Peters attempted to incorporate the "fraudulent stipulation" into Gregory's misdemeanor case. Also, in an attempt to pressure Kati Dabbs to testify "as they wanted [her] to testify," employees of Defendant Tazewell County told Defendant Shelly Huseman to file false "State Central Register" reports on December 3, 2003 and February 9, 2004. In these reports, Huseman lied to the "call taker" by telling them that Kati had a service plan for abuse and neglect. DCFS Defendants Patrick Flannigan, Jennifer Seward, and Christina Showalter "also participated in filing these false State Central Register reports containing false allegations and innuendo in order to pressure the Plaintiffs to 'cop a plea bargain'." On December 18, 2003, an emergency hearing

was held in the shelter care case at which Gregory Dabb's visitation with Nicholas was stopped for almost six months.

The Amended Complaint alleges that after February 2004, Defendants conspired to delay the resolution of the shelter care case by (1) not filing the service plan on time; (2) intentionally not providing services; (3) abusing N.D.'s visitation time by discussing the shelter care case, telling N.D. what he could or could not discuss with his parents, and never increasing the time to promote family unity; and (4) creating new and unnecessary services.

The Amended Complaint also alleges that Defendants conspired to keep the shelter case open and to pressure Mr. Dabbs into pleading guilty to the misdemeanor charges. For example, the Amended Complaint alleges that on one occasion visitation was used to "manufacture" another charge against Mr. Dabbs for "feeding N.D. ice cream." Also, in August 2004, Defendant Camelot Social Worker Carla Warnke-Kuntz accused Gregory Dabbs in open court of "attempted murder, child torture and kidnaping." In December 2004, Defendant Nancy Reeves and "Camelot" accused Gregory Dabbs of burning cats with gasoline, child molestation, and "various other things."

Plaintiffs claim their constitutional rights were violated when Defendants (1) unjustifiably used "illegal and unconstitutional means" to remove the minor Plaintiffs from their parents (Count I), (2) conspired to "illegally detain" and "artificially" keep the minor Plaintiffs out of their parents custody (Count II); (3) conspired to "string their contracts through various means" to procure Federal Government funding (Count III); (4) conspired to "abuse" Plaintiffs Kati Dabbs and Z.D. by

4

filing false State Central Registry reports (Count IV); (5) conspired to "illegally detain or take" N.D. and Z.D. from their parents (Count V); (6) violated federal and state law by deliberately delaying the shelter care proceedings (Count VI); (7) abused Plaintiffs' civil rights and abused process by prosecuting the shelter care petition and misdemeanor case with an ulterior purpose (Count VII); (8) delayed services and created new services in the shelter care case (Count VIII); (9) withheld visitation with N.D. when Gregory Dabbs refused to plead guilty to the misdemeanor case (Count IX); and (10) failed to meet deadlines prescribed by state law in the shelter care case, and repeatedly slandered, libeled, and defamed Plaintiffs in the shelter care case (Count X). Plaintiffs further claim that (1) Defendants' employers are liable on a respondeat superior basis (Count XI); (2) that the individual Defendants have no immunity under state law (Count XII); and (3) that Defendants' employers have a duty to indemnify the individual Defendants that were acting within the scope of their employment. Plaintiffs claim all of these violations where undertaken pursuant to Defendant Tazewell County's "policy and practice," by Tazewell County State's Attorney's Office employees and the various social worker Defendants "in their official and individual capacities." Plaintiffs have also filed a Motion for Preliminary Injunction seeking an order forbidding contact between Plaintiffs and Defendants.

## II. **LEGAL STANDARD**

When considering a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), the Court must view the Complaint in the light most favorable to the Plaintiff and the Complaint's well-pleaded factual

allegations must be accepted as true.  <u>Williams v. Ramos</u>, 71 F.3d 1246, 1250 (7th Cir. 1995).  Therefore, a complaint can only be dismissed if a plaintiff cannot prove any set of facts upon which relief can be granted.  <u>Travel All Over the World, Inc. v. Kingdom of Saudi Arabia</u>, 73 F.3d 1423, 1429-30 (7th Cir. 1996).  However, the Court is not bound by a plaintiff's legal conclusions.  <u>Baxter by Baxter v. Vigo County School Corp.</u>, 26 F.3d 728, 730 (7th Cir. 1994).

## III. ANALYSIS

Defendants have moved to dismiss the Amended Complaint.  On September 14, 2005, the Court appointed a Guardiam Ad Litem ("GAL") to represent the interests of the minor Plaintiffs N.D. and Z.D. Since then, the GAL has moved to dismiss N.D.'s and Z.D.'s claims. Also, Plaintiff Kati Dabbs has moved to dismiss her claims as well. With this procedural background, the Court will address the pending motions in turn.

### A.  The GAL's Report to the Court and Plaintiffs N.D.'s and Z.D.'s Motion to Dismiss

The Court has carefully considered the GAL's Report to the Court and the accompanying Motion to Dismiss filed on behalf of N.D and Z.D.  Based on the representations made to the Court, the Court finds that the Guardian Ad Litem's investigation was thorough and extensive.  Additionally, the Court notes that the GAL did an admirable job of reporting her findings to the Court. Accordingly, based on the substance contained in the report and the GAL's recommendation, the Court grants Plaintiffs N.D.'s and Z.D.'s Motion to Dismiss and dismisses all the claims of the minor children.

6

**B.   Motion to Dismiss on Behalf of Kati Dabbs**

In this motion, Kati Dabbs indicates that the Complaint was filed without her consent and that she does not wish to pursue the instant action.  Accordingly, Plaintiff Kati Dabb's claims are dismissed without prejudice.

**C.   Defendants' Motion to Dismiss**

All of the Defendants in this case have moved to dismiss the Amended Complaint based on, *inter alia*, the Rooker-Feldman doctrine and Younger abstention doctrine.  For the reasons that follow, the Court finds all of the remaining claims in the Amended Complaint should be dismissed.

**1.   Rooker-Feldman Doctrine**

The Rooker-Feldman doctrine interprets 28 U.S.C. § 1257 as ordinarily barring lower federal courts from engaging in appellate review of state court determinations.  Ritter v. Ross, 992 F.2d 750, 753 (7th Cir. 1993).  General challenges to the constitutionality of a state rule or statute "do not necessarily require a United States district court to review a final state-court judgment in a judicial proceeding." District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 486, 103 S.Ct. 1303, 1318 (1983).  However, "engaging in impermissible appellate review may occur when a district court is asked to entertain a claim that was not even argued in the state court but is 'inextricably intertwined' with the state court judgment." Ritter, 992 F.2d at 753 (quoting Feldman, 460 U.S. at 483 n. 16).  When considering a plaintiff's claims in light of the Rooker-Feldman doctrine, a court must ask two questions:  1) Were the proceedings before the state

7

court a judicial proceeding;  2) If so, are the plaintiff's claims inextricably intertwined with those proceedings so as to make consideration of the plaintiff's claims an impermissible review of state proceedings?  Leaf v. Supreme Court of the State of Wisconsin, 979 F.2d 589, 597 (7th Cir. 1992).  A claim is inextricably intertwined with a state court proceeding if the relief sought by a plaintiff would in effect require invalidating the state court judgment. Landers Seed Co., Inc. v. Champaign Ntl. Bank, 15 F.3d 729, 733 (7th Cir. 1994) (citing Facio v. Jones, 929 F.2d 541, 543 (10th Cir. 1991)).  The effect of this doctrine is to make it clear that "no matter how erroneous or unconstitutional the state court judgment may be, the Supreme Court of the United States is the only federal court that could have jurisdiction to review a state court judgment." Remer v. Burlington Area School Dist., 205 F.3d 990, 996 (7th Cir. 2000).

    **2.   Younger Abstention Doctrine**

In Younger v. Harris, 401 U.S. 37 (1971), the Supreme Court held that absent extraordinary circumstances, a federal court should not enjoin a pending state criminal proceeding. Id. at 53-54.  This principle has been extended to civil proceedings when important state interests are involved. Ohio Civil Rights Commission v. Dayton Christian School, Inc., 477 U.S. 619, 628 (1986).  Similar to criminal proceedings, in child welfare proceedings, the state has an independent interest in the welfare of the children and "in a practical sense, the State is a party to the proceedings in a fashion analogous to its role in a standard criminal proceeding."  Brunken v. Lance, 807 F.2d 1325, 1330 (7th

8

Cir. 1986).

### 3. Plaintiffs' claims

#### (a) Counts I-III, V-VI, VIII, X

Plaintiffs' claims that Defendants (1) unjustifiably used "illegal and unconstitutional means" to remove the minor Plaintiffs from their parents; (2) conspired to "illegally detain" and "artificially" keep the minor Plaintiffs out of their parents custody, (3) conspired to "string their contracts through various means" to procure Federal Government funding, (4) conspired to "illegally detain or take" N.D. and Z.D. from their parents; (5) violated federal and state law by deliberately delaying the shelter care proceedings; (6) delayed services and created new services in the shelter care case; and (7) failed to meet deadlines prescribed by state law in the shelter care case, are all directly related to the conduct of the Defendants within the confines of the shelter care case. Initially, the Court notes that the Amended Complaint does not allege that, nor is there any other indication that, Z.D. was ever removed from his parent's custody. The Court also notes that Kati Dabbs is not N.D.'s mother. Consequently, these claims pertain only to Gregory Dabbs as to the removal of N.D. Further, although the Amended Complaint alleges N.D. was removed from Gregory's care "without a court order or warrant," the Amended Complaint also states that on the date N.D. was removed from Gregory's care (February 18, 2003), N.D. was "ordered to reside apart from his parents." These statements appear to contradict each other. Nevertheless, the Court finds the manner in which N.D. was removed from his parent's custody is irrelevant here because any claim based on N.D.'s seizure would belong to N.D. and N.D. has

voluntarily dismissed his claims.

That being said, the Court finds that these claims, to the extent the issues have been finally adjudicated in state court, are all barred by the Rooker-Feldman doctrine as they are inextricably intertwined with the shelter care case; and to the extent these issues are still pending before the state court the Younger abstention doctrine forbids this Court's intervention. Illinois law allows parents involved in child welfare proceedings such as Gregory Dabbs "to be present, to be heard, to present evidence material to the proceedings, to cross-examine witnesses, to examine pertinent court files . . . and to be represented by counsel." 705 ILCS 405/1-5. Moreover, a review of the Act as a whole indicates that Gregory Dabbs should have been afforded the opportunity to be heard and to controvert evidence throughout the court proceedings in which his rights and the rights of N.D. were adjudicated. Accordingly, if he was denied those rights the proper recourse for him is to file an appeal with the Illinois Appellate Court.

In conclusion, to the extent the state court's decisions in the shelter care case constitutes a final judgment, the Rooker-Feldman prevents this Court from having jurisdiction to hear the claims listed above--Counts I-III, V-VI, VIII, X[1]. To the extent the state court judgment is not yet final, the Court finds that the

---

[1] The Court notes that Plaintiffs have also alleged in Count X that Defendants repeatedly slandered, libeled, and defamed them in the shelter care case. To the extent this claim is based purely on state law, the Court declines to exercise supplemental jurisdiction considering all of Plaintiffs' federal claims are being dismissed with this Order. See 28 U.S.C. § 1367(c)(3).

appropriate action is to refrain from deciding these claims, as Younger abstention presupposes that the state court is an adequate forum to address Plaintiffs' allegations.

### (b) Count IV

Count IV of the Amended Complaint states that Defendants conspired to "abuse" Plaintiffs Kati Dabbs and Z.D. by filing false State Central Registry reports. Kati Dabbs and Z.D. are no longer Plaintiffs in this case. Because Gregory Dabbs has no legal interest in this claim, the Court will dismiss it.

### (c) Counts VII and IX

Counts VII and IX of the Amended Complaint relate to the manor in which Gregory Dabbs' misdemeanor case and the shelter care case were handled. Again, these claims are barred by the Rooker-Feldman doctrine to the extent they have been finally adjudicated because they are inextricably intertwined with Gregory's two state cases. And, to the extent the state cases are still pending, the Court will refuse to intervene as required by the Younger abstention doctrine. Further, before Gregory Dabbs can bring a civil action based on violations of his constitutional rights during or by the criminal proceedings against him, he must prove that his conviction has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of writ of habeas corpus. See Heck v. Humphrey, 512 U.S. 477, 486-87 (1994). There is no indication that any of these events has occurred.

**IV.  CONCLUSION**

IT IS THEREFORE ORDERED that Camelot Defendants' Motion to Dismiss [Doc. # 101], Defendant Tazewell County's Motion to Dismiss and Motion to Strike [Doc. # 106], Motion to Dismiss by Defendants' Flannigan, Stewart, Seward, Showalter and Reeves [Doc. # 109], Plaintiffs N.D.'s and Z.D.'s Motion to Dismiss [Doc. # 122]; and Motion to Dismiss on Behalf of Kati Dabbs [Doc. # 130] are GRANTED.

IT IS FURTHER ORDERED that Plaintiffs' Motion for Preliminary Injunction [Doc. # 94] is DENIED as MOOT.

CASE TERMINATED.

Entered this ___20th___ day of March, 2006.

                                                          s/ Joe B. McDade
                                                          JOE BILLY McDADE
                                              United States District Judge